FILED
 2013 Mar-15  PM 02:58
 U.S. DISTRICT COURT
     N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **ELLA BURNS ASBERRY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No.:  2:11-CV-3913-VEH |
| | ) |
| **CAROLYN W. COLVIN,** | ) |
| **ACTING COMMISSIONER,** | ) |
| **SOCIAL SECURITY** | ) |
| **ADMINISTRATION,** | ) |
| | ) |
| **Defendant.** | ) |

## **MEMORANDUM OPINION**[1]

Plaintiff Ella Burns Asberry ("Ms. Asberry") brings this action pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act (the "Act"). She seeks review of a final adverse decision of the Commissioner of the Social Security Administration

---

[1] The court recently became aware that Carolyn W. Colvin was named the Acting Commissioner of the Social Security Administration on February 14, 2013. *See* http://www.socialsecurity.gov/pressoffice/factsheets/colvin.htm ("On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security.") (last accessed on Mar. 8, 2013). Under 42 U.S.C. § 405(g), "[a]ny action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office." Accordingly, pursuant to 42 U.S.C. § 405(g) and Rule 25(d) of the Federal Rules of Civil Procedure, the court has substituted Carolyn W. Colvin for Michael Astrue in the case caption above and **HEREBY DIRECTS** the clerk to do the same party substitution on CM/ECF.

(the "Commissioner" or "Secretary"), who denied her application for Disability Insurance Benefits ("DIB"). Ms. Asberry timely pursued and exhausted her administrative remedies available before the Commissioner. The case is ripe for review pursuant to 42 U.S.C. § 405(g), § 205(g) of the Act.

## FACTUAL AND PROCEDURAL HISTORY

Ms. Asberry was a 57-year-old female at the time of her hearing before the administrative law judge (the "ALJ") held on January 5, 2011. (Tr. 228, 33). In terms of education, Ms. Asberry completed high school and attended college for three years. (Tr. 41, 174).

Ms. Asberry's prior work experience over the past fifteen years was as a customer service representative for AT&T. (Tr. 57). As the vocational expert testified during the hearing, this position falls into the classification of "sedentary and skilled at the five level" work. (Tr. 57).

Ms. Asberry applied for DIB on October 23, 2009. (Tr. 20, 65). Ms. Asberry maintains that she became disabled on February 1, 2008, due to lymphedema[2] of the right arm and hypertension. (Tr. 65). Her claim was denied initially on January 21, 2010. (Tr. 20, 65).

---

[2] Lymphedema is defined as swelling or "edema due to faulty lymphatic drainage." *See* http://www.merriam-webster.com/medical/lymphedema (accessed on Mar. 8, 2013).

Ms. Asberry timely requested a hearing before an ALJ on February 12, 2010. (Tr. 20, 74). A video hearing was held on January 5, 2011, with Ms. Asberry appearing in Birmingham, Alabama. (Tr. 20, 33).

On January 13, 2011, the ALJ concluded Ms. Asberry was not disabled as defined by the Act and denied her DIB application. (Tr. 20-28). On February 10, 2011, Ms. Asberry submitted a request for review of the ALJ's decision. (Tr. 11). On September 15, 2011, the Appeals Council denied review, which resulted in the ALJ's disability determination that was adverse to Ms. Asberry becoming the final decision of the Commissioner. (Tr. 1).

On November 14, 2011, Ms. Asberry initiated her lawsuit with this court seeking a review of the Commissioner's decision. (Doc. 1). On May 15, 2012, Ms. Asberry filed a brief (Doc. 10) in support of her appeal, and on June 18, 2012, the Commissioner followed with his responsive brief. (Doc. 11). Ms. Asberry elected not to file a reply brief. This court has carefully considered the record, and for the reasons stated below, reverses the Commissioner's denial of benefits, and remands the case for further development and consideration.

## STANDARD OF REVIEW

The court's review of the Commissioner's final action is narrowly circumscribed. The function of this court is to determine whether the decision of the

Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). This court will determine that the ALJ's opinion is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. Substantial evidence is "more than a scintilla, but less than a preponderance." *Id*. Factual findings that are supported by substantial evidence must be upheld by the court.

The ALJ's legal conclusions, however, are reviewed *de novo*, because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## **STATUTORY AND REGULATORY FRAMEWORK**

To qualify for disability benefits and establish her entitlement for a period of

disability, the claimant must be disabled as defined by the Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;
(2) whether the claimant has a severe impairment;
(3) whether the claimant's impairment meets or equals an impairment listed by the Secretary;
(4) whether the claimant can perform her past work; and
(5) whether the claimant is capable of performing any work in the national economy.

---

[3] The "Regulations" promulgated under the Act are listed in 20 C.F.R. Parts 400 to 499, as current through February 28, 2012.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to former applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel,* 189 F.3d 561 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps one and two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the Secretary to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show that such work exists in the national economy in significant numbers. *Foote*, 67 F.3d at 1559.

## **FINDINGS OF THE ADMINISTRATIVE LAW JUDGE**

The ALJ found Ms. Asberry had not engaged in substantial gainful activity since the alleged onset date of her disability, *i.e.*, February 1, 2008. (Tr. 22 ¶ 2). Thus, the claimant satisfied step one of the five-step test. 20 C.F.R. § 404.1520(b).

Under step two, the ALJ found that "[t]he claimant has the following severe impairments: lymphedema of the right arm, status-post mastectomy; status-post right knee surgery[.]" (Tr. 22 ¶ 3). Accordingly, the ALJ concluded that Ms. Asberry satisfied the second step of the sequential disability evaluative process. 20 C.F.R. § 404.1520(c). The ALJ also determined at this stage that Ms. Asberry's medically

determinable impairments of hypertension, obstructive sleep apnea, and obesity were non-severe conditions. (Tr. 22).

At step three, the ALJ concluded that Ms. Asberry did not have an impairment or a group of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 23 ¶ 4). Ms. Asberry does not contest this determination on appeal.

The ALJ then evaluated Ms. Asberry's residual functional capacity ("RFC"), and the claimant was found to have the capacity:

> [T]o perform light work as defined in 20 CFR 404.1567(b), with the ability to lift, carry, push, and pull up to twenty pounds occasionally and ten pounds frequently, to stand/walk for about a total of six hours each workday, and to sit for about a total of six hours each workday. However, the claimant is unable to climb ladders, ropes, or scaffolds and should only occasionally crouch and crawl. The claimant also retains the ability to frequently balance, stoop, kneel, and climb stairs/ramps.

(Tr. 23 ¶ 5).[4]

---

[4] The Regulations define light work as:

(b) Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting

The ALJ then determined that Ms. Asberry's RFC did not prevent her from performing her past relevant sedentary work as a customer service representative. (Tr. 26). Because the ALJ found that Ms. Asberry was able to perform past relevant work, it was unnecessary to continue with any further analysis.

Nevertheless, the ALJ elected to make an alternative finding that Ms. Asberry was capable of making a successful adjustment to other jobs that exist in significant numbers in the national economy. (Tr. 26-27). Examples of such positions included employment as a receptionist, appointment clerk, and order clerk. (Tr. 27). Accordingly, the ALJ concluded that Ms. Asberry was not disabled as defined by the Act, and denied her DIB claim. (Tr. 27 ¶ 7; Tr. 28).

## ANALYSIS

The court can reverse a finding of the Secretary if it is not supported by substantial evidence. 42 U.S.C. § 405(g). "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th

---

factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b) (current through February 28, 2012).

Cir. 1980)).[5]

Ms. Asberry primarily asserts that the Commissioner's decision is deficient because (i) the ALJ did not adequately consider obesity in determining Ms. Asberry's RFC (Doc. 10 at 5); and (ii) the ALJ did not support his residual functional findings with substantial evidence. (Doc. 10 at 8). Having considered these issues and studied the record, the court agrees with Ms. Asberry that, under the circumstances of her case, the Commissioner has committed reversible error.

## I.    THE ALJ'S DECISION DOES NOT SUBSTANTIATE THAT HE FOLLOWED THE PROPER LEGAL STANDARDS WHEN DETERMINING MS. ASBERRY'S RFC.

The ALJ found that Ms. Asberry had a collection of medically determinable impairments with some of those independently satisfying the severity threshold and others not. (Tr. 22-23). However, in formulating Ms. Asberry's RFC, the ALJ only expressly credited those impairments that he determined were severe. (*See* Tr. 24 (listing all of Ms. Asberry's conditions, indicating that "[t]he medical evidence of record supports some of the claimant's allegations[,]" and then discussing only Ms. Asberry's right mastectomy in 2003 "which led to lymphedema of her right arm" and her surgery on her right knee in 2006)); (*see also* Tr. 26 (summarizing RFC

---

[5] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

determination and again referencing only Ms. Asberry's "lymphedema of the right arm and associated pain" and her "status-post right knee surgery")).

In *Walker v. Bowen*, 826 F.2d 996 (11th Cir. 1987), the Eleventh Circuit explained the ALJ's obligation to consider severe as well as non-severe conditions in combination when deciding a claimant's RFC:

> We also find that the ALJ failed to consider all of Walker's impairments in evaluating the evidence. It is established that the ALJ must consider the combined effects of a claimant's impairments in determining whether she is disabled. *Jones*, 810 F.2d at 1006. When "a claimant has alleged a multitude of impairments, a claim for social security benefits may lie even though none of the impairments, considered individually, is disabling." *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984). Furthermore, "it is the duty of the ... [ALJ] to make specific and well-articulated findings as to the effect of the combination of impairments and to decide whether the combined impairments cause the claimant to be disabled." *Id.*; 20 C.F.R. § 416.923. It is clear that in this case the ALJ did not consider the combination of Walker's impairments before determining her residual functional capacity. The ALJ made specific reference only to Walker's left ankle and obesity. The ALJ's findings do not mention Walker's arthralgias in the right knee, phlebitis in the right arm, hypertension, gastrointestinal problems, or asthma, except to the extent that these "subjectiv[e] complain[t]s do not establish disabling pain." Furthermore, Walker complains of pain in both legs. We discuss further the inadequacy of the ALJ's treatment of Walker's pain complaints in Section III. As we observed in *Chester*, 792 F.2d 129, "pain may not be disabling in and of itself, [but] it may be disabling when considered along with . . . other impairments." *Id.* at 132. The ALJ's failure to consider Walker's physical impairments and pain complaints in combination alone requires that the decision be reversed and remanded for reconsideration. *Hudson v. Heckler*, 755 F.2d 781, 785 (11th Cir. 1985). Thus, we remand this case for review of all of the evidence

under the proper legal standards.

*Walker*, 826 F.2d at 1001-02 (emphasis added).

Here, although the ALJ found Ms. Asberry's obesity, hypertension, and sleep apnea to be non-severe conditions when he evaluated them separately (Tr. 22-23), the ALJ's decision lacks any indication that he ever considered their collective impact with each other or in combination with her two severe impairments when he determined her RFC. *Cf. Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir. 1990) ("In evaluating a claimant's residual function capacity, the ALJ must consider a claimant's impairments in combination." (citing 20 C.F.R. § 404.1545 (1989))).

With respect to Ms. Asberry's obesity (and her related condition of sleep apnea), this omission is particularly troubling to the court as it is undisputed that Ms. Asberry's body mass index ("BMI") of 42 puts her in the "extreme" obesity range. (*See* Doc. 10 at 5-6 (detailing Ms. Asberry's BMI)); *see also* SSR 02-1P, 2000 WL 628049, at *2 (S.S.A.) (Sept. 12, 2002) ("Level III, termed 'extreme' obesity and representing the greatest risk for developing obesity-related impairments, includes BMIs greater than or equal to 40.").

SSR 02-01p covers the Commissioner's duty to consider obesity as a medically determinable impairment and states in part:

8. How Do We Evaluate Obesity in Assessing Residual Functional

Capacity in Adults and Functional Equivalence in Children?

Obesity can cause limitation of function. The functions likely to be limited depend on many factors, including where the excess weight is carried. An individual may have limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling. It may also affect ability to do postural functions, such as climbing, balance, stooping, and crouching. The ability to manipulate may be affected by the presence of adipose (fatty) tissue in the hands and fingers. The ability to tolerate extreme heat, humidity, or hazards may also be affected.

The effects of obesity may not be obvious. <u>For example, some people with obesity also have sleep apnea</u>. This can lead to drowsiness and lack of mental clarity during the day. Obesity may also affect an individual's social functioning.

An assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment. Individuals with obesity may have problems with the ability to sustain a function over time. As explained in SSR 96-8p ("Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims"), our RFC assessments must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. <u>In cases involving obesity, fatigue may affect the individual's physical and mental ability to sustain work activity. This may be particularly true in cases involving sleep apnea</u>.

<u>The combined effects of obesity with other impairments may be greater than might be expected without obesity</u>. For example, someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone. . . .

As with any other impairment, <u>we will explain how we reached our</u>

> conclusions on whether obesity caused any physical or mental limitations.

SSR 02-1p, 2000 WL 628049, at *6-7 (S.S.A.) (Sept. 12, 2002) (footnote omitted) (emphasis added); *cf. Thomason v. Barnhart*, 344 F. Supp. 2d 1326, 1330 (N.D. Ala. 2004) ("The ALJ failed to take plaintiff's obesity into account and its effect on her medical impairments.") (footnotes omitted).

In response to this issue, the Commissioner has not cited to any controlling authority which overrules the Eleventh Circuit's holding in *Walker*. Instead, the Commissioner points to *Hutchinson v. Astrue*, 408 Fed. App'x 324, 327 (11th Cir. 2011), an unpublished Eleventh Circuit opinion, and *Wilson v. Barnhart*, 284 F.3d 1219, 1224-25 (11th Cir. 2002). (Doc. 11 at 6-7). Of course, the unpublished decision is not binding on this court, and, in any event, the undersigned is not persuaded by it as it lacks any discussion of *Walker*[6] or an evaluation of obesity as a

---

[6] *Hutchinson* cites to *Jones v. Department of Health and Human Servs.*, 941 F.2d 1529 (11th Cir. 1991). In *Jones*, the Eleventh Circuit observed that it had previously found the following statement made by an ALJ to be adequate "regarding combined impairment: '[B]ased upon a thorough consideration of all evidence, the ALJ concludes that appellant is not suffering from any impairment, *or a combination of impairments* of sufficient severity to prevent him from engaging in any substantial gainful activity for a period of at least twelve continuous months.'" *Jones*, 941 F.2d at 1533 (quoting *Wheeler v. Heckler*, 784 F.2d 1073, 1076 (11th Cir. 1986) (emphasis in original)). The ALJ's decision here does not so straightforwardly indicate that he considered the totality of Ms. Asberry's collection of impairments in combination when he determined her RFC.

medically determinable impairment.

Additionally, *Wilson* is not on point as that decision addressed the issue of whether "the district court erred when it concluded that the combined effects of Wilson's impairments met or equaled the listing for a finding of disability." 284 F.3d at 1224. Thus, the focus of *Wilson* is upon an entirely different step of the disability sequential process. Also, *Wilson* neither discusses *Walker* nor the treatment of obesity as an impairment.

Here, the court is focusing upon the adequacy of the ALJ's RFC finding in light of the fact that the ALJ strictly limited his discussion in that section of his decision to Ms. Asberry's severe impairments only. Perhaps the ALJ did also factor in Ms. Asberry's non-severe impairments in combination (including in particular her obesity) when formulating Ms. Asberry's RFC, but the court simply cannot speculate that the ALJ followed proper legal standards when the express wording used in his decision indicates otherwise.

Therefore, comparable to *Walker*, *Swindle*, and *Barnhart*, because the court

---

Moreover, to the extent that *Jones* and *Walker* conflict in their treatment of combined impairments, this court is bound to follow *Walker* as it precedes *Jones* and a subsequent panel cannot overrule an earlier one. *See United States v. Hogan*, 986 F.2d 1364, 1369 (11th Cir.1993) ("[I]t is the firmly established rule of this Circuit that each succeeding panel is bound by the holding of the first panel to address an issue of law, unless and until that holding is overruled en banc, or by the Supreme Court.").

cannot confirm that the ALJ followed the proper legal standards when arriving at Ms. Asberry's RFC given her collection of severe and non-severe impairments, remand for further consideration is appropriate.

**II.     IN THE ABSENCE OF A SUPPORTING MEDICAL SOURCE STATEMENT OR A PHYSICAL CAPACITIES EVALUATION BY A PHYSICIAN THAT CONSIDERS THE IMPACT OF MS. ASBERRY'S SEVERE IMPAIRMENTS IN COMBINATION WITH HER NON-SEVERE OBESITY, SLEEP APNEA, AND HYPERTENSION, THE ALJ'S RFC DETERMINATION THAT SHE CAN PERFORM A REDUCED RANGE OF LIGHT WORK IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE.**

The ALJ primarily premised his finding that Ms. Asberry's was capable of performing a reduced range of work at the light level (*i.e.*, a more demanding exertional measure than her previous relevant employment as a customer service representative) on "the opinion of State agency medical consultant Robert Heilpern, M.D." ("Dr. Heilpern"). (Tr. 25); (*see id.* ("This opinion [*i.e.*, by Dr. Heilpern] has been given significant weight, as it is consistent with the weight of the objective medical evidence.")). However, as Ms. Asberry correctly points out (Doc. 10 at 8), the opinion of a non-examining physician "is entitled to little weight and taken alone does not constitute substantial evidence to support an administrative decision." *Swindle*, 914 F.2d at 226 n.3 (11th Cir. 1990) (citing *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985)).

Dr. Heilpern's physical capacity evaluation of Ms. Asberry is additionally deficient for the ALJ to substantially rely upon as the only conditions he listed as being factored into his assessment were Ms. Asberry's status post mastectomy and her hypertension. (Tr. 363). Therefore, omitted from the scope of Dr. Heilpern's functional report was the combined vocational consequences attributable to Ms. Asberry's severe right knee impairment as well as her obesity and sleep apnea.

Further, absent from the record is another physical capacities assessment or a medical source statement[7] conducted by a physician that substantiates Ms. Asberry's ability to perform a reduced range of light work given her combination of severe and non-severe impairments. Such an omission from the record is significant to the substantial evidence inquiry pertaining to the ALJ's RFC determination. *Cf. Rohrberg v. Apfel*, 26 F. Supp. 2d 303, 311 (D. Mass. 1998) ("The ALJ failed to refer to-and this Court has not found-a proper, medically determined RFC in the record.").

The court acknowledges that the ALJ did refer within his decision to the consultative examination of Ms. Asberry by Rodolfo Veluz, M.D. ("Dr. Veluz"). (Tr. 25-26 (citing Exhibit 11F)). However, such documentation from Dr. Veluz is

---

[7] "Medical source statements are 'medical opinions submitted by acceptable medical sources, including treating sources and consultative examiners, about what an individual can still do despite a severe impairment(s), in particular about an individual's physical and mental abilities to perform work-related activities on a sustained basis.'" SSR 96-5p, 1996 WL 374183, at *4 (S.S.A.) (July 2, 1996).

reported merely as raw physical findings applicable to Ms. Asberry. (Tr. 360-62).

Moreover, Dr. Veluz's report does not include any opinion about the effect of Ms. Asberry's impairments in <u>vocational</u> terms or attach a physical capacities evaluation of her. *See, e.g., Rohrberg*, 26 F. Supp. 2d at 311 ("Where the 'medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate these diagnoses to specific residual functional capabilities such as those set out in 20 C.F.R. § 404.1567(a) . . . [the Commissioner may not] make that connection himself.'" (quoting *Rosado v. Secretary of Health and Human Servs.*, 807 F.2d 292, 292 (1st Cir. 1986))).

As another district judge of this court aptly explained the RFC issue in the context of an ALJ who comparably determined, without the benefit of a physical capacities evaluation conducted by a physician,[8] that the claimant was not disabled:

> While the Record contains Ms. Rogers' [s] medical treatment history, it lacks any physical capacities evaluation by a physician. The ALJ made his residual functional capacity evaluation without the benefit of such evaluation. An ALJ is allowed to make some judgments as to residual physical functional capacity where so little physical impairment is involved that the effect would be apparent to a lay person. *Manso-Pizarro v. Secretary of Health and Human Services*, 76 F.3d 15

---

[8] As explained above, here the only physical capacity assessment included in the record was completed by Dr. Heilpern, a non-examining physician, and his assessment reflects that, after undertaking a paper review of her medical records, he only considered two of Ms. Asberry's five impairments when he generated that document.

17

> (1st Cir. 1996).  In most cases, including the case at bar, the alleged physical impairments are so broad, complex, and/or ongoing that a physician's evaluation is required.  *Id.*  In order to have developed a full, fair record as required under the law, the ALJ should have re-contacted Ms. Roger's [sic] physicians for physical capacities evaluations and/or sent her to physicians for examinations and physical capacities evaluations.  Further, Ms. Rogers' [s] ability to lift and to manipulate objects must be thoroughly evaluated by at least one physician. These evaluations shall be obtained upon remand. Ms. Rogers'[s] residual functional capacity was not properly determined nor supported by substantial evidence in this case.

*Rogers v. Barnhart*, No. 3:06-CV-0153-JFG, (Doc. 13 at 5) (N.D. Ala. Oct. 16, 2006) (emphasis added); *see also Manso-Pizarro*, 76 F.3d at 17 ("With a few exceptions (not relevant here), an ALJ, as a lay person, is not qualified to interpret raw data in a medical record." (citing *Perez v. Secretary of Health and Human Servs.*, 958 F.2d 445, 446 (1st Cir. 1991))) (emphasis added); *Rohrberg*, 26 F. Supp. 2d at 311 ("An ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." (citing *Rodriguez v. Secretary of Health and Human Servs.*, 893 F.2d 401, 403 (1st Cir. 1989))) (emphasis added); *cf. Giddings v. Richardson*, 480 F.2d 652 (6th Cir. 1973) ("To meet such a *prima facie* case it is not sufficient for the government to rely upon inconclusive medical discussion of a claimant's problems without relating them to the claimant's residual capacities in the field of employment.") (emphasis added).

Comparable to *Rogers*, *Manso-Pizarro*, and other similar cases, a lay person such as an ALJ is not able to discern Ms. Asberry's work-related exertional abilities and appropriate non-exertional restrictions based upon the unfiltered information contained in her medical records given her variety of severe and non-severe impairments. Therefore, in the absence of a medical source statement and/or any physical capacities evaluation conducted on Ms. Asberry by a physician that considers the vocational impact of all her impairments and corroborates the ALJ's determination that she is capable of performing a reduced range of light work, the record has not been adequately developed. *See, e.g., Cowart v. Schweiker*, 662 F.2d 731, 732 (11th Cir. 1981) (citing *Thorne v. Califano*, 607 F.2d 218, 219 (8th Cir. 1979)); *see also Sobolewski v. Apfel*, 985 F. Supp. 300, 314 (E.D.N.Y. 1997) ("The record's virtual absence of medical evidence pertinent to the issue of plaintiff's RFC reflects the Commissioner's failure to develop the record, despite his obligation to develop a complete medical history.").

Likewise, the ALJ's determination that Ms. Asberry can perform light work with certain non-exertional restrictions is not supported by substantial evidence. Accordingly, the decision of the Commissioner is due to be reversed for this independent reason, and the case remanded for further proceedings consistent with this memorandum opinion.

## CONCLUSION

Based upon the court's evaluation of the evidence in the record and the submissions of the parties, the court finds that the Commissioner's final decision is not supported by substantial evidence. Accordingly, the decision of the Commissioner will be remanded by separate order.

**DONE** and **ORDERED** this the 15th day of March, 2013.

**VIRGINIA EMERSON HOPKINS**
United States District Judge